UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KEVIN PRATT,

               Plaintiff,

     -against-

HUSTEDT CHEVROLET, HUSTEDT CHEVROLET,
INC., HUSTEDT HYUNDAI,  HUSTEDT HYUNDAI,
INC., and CHARLES CHALOM, individually
and in his capacities as owner and/or agent of
Hustedt Chevrolet, Hustedt Chevrolet, Inc.,
Hustedt Hyundai, and Hustedt Hyundai, Inc.,
and JOHN DOES 1-20

               Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

Civil Action No. 05-4148
(DRH) (MLO)

**APPEARANCES:**

**Steinberg, Fineo, Berger & Fischoff, P.C.**
Attorneys for Plaintiff
401 Broadhollow Road, 4th Floor
Melville, New York 11746
By:    Sharon D. Simon, Esq.

**Milman Labuda Law Group, PLLC**
Attorneys for Defendants
3000 Marcus Avenue, Suite 3003
Lake Success, New York 11042
By:    Perry S.  Heidecker, Esq.
        Michael J. Mauro, Esq.

**HURLEY, Senior District Judge:**

      This action is one of several pending before this Court in which a former employee of

Defendants Hustedt Chevrolet, Hustedt Chevrolet Inc. ("Chevrolet Inc."), Hustedt Hyundai,

and/or Hustedt Hyundai, Inc. ("Hyundai Inc.") (collectively "Dealership Defendants") is seeking redress for the alleged discriminatory and retaliatory practices of Defendant Charles Chalom ("Chalom"),[1] owner of Dealership Defendants, and hostile work environment created by him. In the instant case, Plaintiff Kevin Pratt ("Plaintiff" or "Pratt") asserts the following claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., Section 1981, 42 U.S.C. § 1981, and the New York Executive Law § 296: (1) termination of his employment as a result of race discrimination; (2) a hostile work environment based on his race; (2) hostile work environment based sex; and (3) retaliation for opposing Chalom's discriminatory practices and harassment against himself and his co-worker Josephine Caronia. Presently before the Court is Defendants' motion for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

## Background

Dealership Defendants are engaged in the sale and lease of cars and trucks. Pratt, an African American male, was employed by Chevrolet Inc. and Hyundai Inc. as a car salesperson from approximately June 2004 to May 2005 when he was terminated. Chalom owns 100% of the stock of Chevrolet Inc. and Hyundai Inc. and was Pratt's supervisor. Chalom has the final decision-making authority for the Dealership Defendants.

Josephine Caronia was also employed by Chevrolet Inc. and held the position of Controller. Other co-workers of Plaintiff and Caronia were Frank Ventimiglia ("Ventimiglia"), Andrew Levy ("Levy") and Paul Weiss ("Weiss"). Caronia, Weiss, Ventimiglia, and Levy all

---

[1] Dealership Defendants and Chalom shall be collectively referred to as Defendants.

commenced actions against Defendants alleging discrimination.  It is alleged, among other things, that Chalom was given to constant outbursts of unlawful and inappropriate epithets against different racial and ethnic groups and sexually harassed Caronia.

According to Pratt, Chalom directed racial comments and racial slurs at Pratt, including the term nigger several times, as well using spic to refer to Hispanics .  The following deposition testimony provides one example:

> I [Pratt] came and said [to Chalom] listen, Tom Malis just spat in my direction while I was working with customers and he called me a nigger. [Chalom responded] you are a nigger, he is a sand nigger, he pointed out somebody that was Arab and he call them a sand nigger.   He'd just start talking from right there, just like that, whatever he felt like saying he said it.  I even had the extent to where a customer was like did he say what I thought he said, who was that, or if Tom Malis would call me a nigger they would say who is that guy right there.

(Pratt Dep. at 142.)   Other employees at the dealerships also heard Chalom use the word nigger; in fact, Chalom admitted using the word nigger once in the dealership.  (*See, e.g.,* Caronia Dep. at 368; Chalom Dep. at 171.)  Pratt further testified about another verbal exchange between himself and Chalom about co-worker Tom Malis:

> I'd say Charlie, listen, Tom keeps calling me a nigger, he keeps spitting in my direction, he keeps challenging me to a fist fight and telling me he was going to break my legs, he's going to do this and he's going to do that.  Then [Chalom would] go over there and tell Tom don't let him beat you, don't let that nigger win, you let him win every month, you let him do this, you let him do that.

(Pratt Dep. at 146.)  Pratt also testified as to the following incident:

> Harry and Joey thought it was funny one day to tell me to stop complaining and I got what I deserve already or what I should be entitled to.  I said what is that, they said 40 acres and a mule. Joey specifically said it himself.  He thought it was funny.   I went to the

desk and complained and when I got back from the desk Joey said it again in front of several other employees he said it. . . . . I complained to the manager, I told Mr. Chalom his son just told me that I got what I was entitled to, 40 acres and a mule. [Chalom said] nothing.

(Id. at 152-53.)

According to Pratt, in response to one of his complaints about a racial slur used by a fellow salesman, the following occurred: "he [Chalom] told me that, you know you complain all the time, you should be glad to be working. I said he called me a nigger, he said you are a nigger, he says you're not African American, you call yourself African American, you're not, your [sic] black . . . ." (Id. at 150.)

Regarding his being fired, Pratt avers that he was called into a meeting with Chalom and asked by Chalom:

"to prove my loyalty" to him by signing an affidavit saying that Ms. Caronia and Frank Ventimiglia had been having an affair, and also making accusations against Frank of stealing. I had no knowledge of such things and I completely refused to sign this affidavit. Chalom told me that because I would not prove my "loyalty" to him by signing the affidavit, I was fired. I couldn't believe it, but it was true. . . . I do not believe the actual reason for my firing was because of loyalty. I believe that Chalom thought he could take advantage of me because of my race, and that he fired me at least in part because I am African American and he considered me to be inferior to others. He said himself several times when I complained about the racial slurs at Hustedt that I should be glad to be working there. . . . I also believe that Chalom fired me because he did not like the idea that I had protested his accusations against Ms. Caronia and Frank Ventimiglia and that I had complained so frequently about the racial remarks at Hustedt.

(Pratt Aff. at ¶¶29-31.)

With regard to his claim of a hostile work environment based on sex, he states:

My desk was situated right near the stairs that led down to the general office area where Ms. Caronia worked, and near one of Chalom's offices. . . . On a frequent basis, I heard Chalom yelling at Ms. Caronia that she was a bitch, an ungrateful whore, that she was "cheating on him," that she was having sex with various men (including Frank Ventimiglia) and similar insults. Ms Caronia would deny these accusations and would sometimes end up in tears. I heard these exchanges because they occurred a few feet away from my desk . . . . On one occasion, Chalom had Ms. Caronia cornered against the office wall while he screamed epithets at her. Ms. Caronia was denying Chalom's accusations and crying. Chalom was not a reasonable man and I knew by that point that directly interfering in this incident would probably result in my being fired. But I objected to the manner that Chalom was treating Ms. Caronia, and so I approached them, looked directly at Chalom to let him know I was there, and offered to clean snow off Ms. Caronia's car. I considered this to be an unspoken form of communication to Chalom to stop what he was doing. . . . But as long as Ms. Caronia worked at the dealership, Chalom never stopped his inappropriate behavior towards her or his screaming at her. After Caronia left Hustedt, Chalom never stopped talking about her. . . . Although I told Chalom that I did not want to be in the middle of the situation, Chalom called me into his office nearly every day and asked me to contact Frank or Josephine and make them offers to return . . . . Chalom went on and on about how he wanted Caronia back at the dealership and in his life. I had to sit there and listen to Chalom because he was my boss. . . . At the same time Chalom said he wanted Caronia back, he also continued to call her awful names, like whore and bitch. I considered these terms extremely offensive and I urged Chalom to stop calling her these names over and over again during our conversations.

(Id. at ¶¶17-27.)

Additional factual information shall be discussed to the extent relevant to the issues at hand.

## *Discussion*

### I. Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate

where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal

knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and

draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e). More particularly, although "summary judgment should be used sparingly" in cases where the material fact at issue is the defendant's intent or motivation, the plaintiff must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

## II. Race Discrimination

Title VII of the Civil Rights Act of 1964 provides in pertinent part:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e-2(a).

Section 1981 states in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, . . . and

to the full and equal benefit of all the laws and proceedings for the security of persons and

property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

Section 1981 claims based on employment discrimination, and employment

discrimination claims under the New York State Human Rights Law are analyzed under the same

standards used for Title VII claims. *See, e.g., Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597,

609 (2d Cir. 2006)*; Whidbee v. Garzarelli Food Specialities, Inc.*, 223 F.3d 62, 69 (2000); *Quinn*

*v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998).

In *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973), the

Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing

Title VII employment discrimination claims based on indirect or circumstantial evidence. *See*

*Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003). This standard was further refined in *Texas*

*Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) and *St. Mary's Honor Ctr.*

*v. Hicks*, 509 U.S. 502, 506-511 (1993).

Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first

establish a prima facie case of discrimination; (2) the burden then shifts to the employer to

articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the

*McDonnell-Douglas* framework and its presumptions and burdens disappears, leaving the sole

remaining issue of "discrimination vel non," and thus (3) the burden shifts back to the plaintiff to

prove that the employer's stated reason is merely pretextual and that discrimination was an actual

reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this

framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

Pratt alleges that Defendants terminated his employment on the basis of his race. In order to establish a prima facie case of discriminatory discharge, Pratt must demonstrate that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See, e.g., Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 311-312 (2d Cir. 1997).

The burden of establishing a prima facie case has been described as "modest," *Viola,* 42 F.3d at 716, or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves*, 530 U.S. at 143.

Likewise, the employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory. *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 111 (W.D.N.Y. 2002) (citing, *inter alia*, *Meiri*, 759 F.2d at 995 (2d Cir. 1985)), *aff'd*, 99 Fed. Appx. 350 (2d Cir. 2004). Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and may not "sit as super personnel departments, assessing the merits — or even the rationality — of employers' non-discriminatory business decisions." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question

of fact as to the credibility of the employer's reasons." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

In order to demonstrate that the employer's stated non-discriminatory reasons for the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). One way a discrimination claimant may show pretext is by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bombero v. Warner-Lambert Co.*, 142 F. Supp. 2d 196, 203 n.7 (D. Conn. 2000) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999), and citing *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)), *aff'd*, 9 Fed. Appx. 38 (2d Cir. 2001). However, to rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all [discrimination] cases." *Meiri*, 759 F.2d at 998.

Defendants do not contest that Pratt has established the first three elements of his prima facie case. Rather, they argue that he cannot establish the fourth prong, i.e. that his termination

occured under circumstances giving rise to an inference of discrimination. Defendants rely on Pratt's deposition testimony, as well as the allegation in his complaint, that Chalom terminated him when he would not sign a statement against Frank Ventimiglia. According to Defendants, "Plaintiff is on record testifying that Defendant Chalom explicitly stated that Plaintiff was being terminated for being disloyal. Consequently, no reasonable juror could find that there is an inference of discrimination to be drawn where the Plaintiff gives a non-discriminatory reason for his termination." (Def.s' Mem. in Supp. at 21.) Continuing, Defendants maintain that Pratt has not established that similarly situated employees were treated more favorably than him because of race and "the accusation of disloyalty is a legitimate non-discriminatory reason for the termination that requires dismissal of the claim." (*Id.*)

Plaintiff retorts that his deposition testimony merely recounts the conversation between him and Chalom at the time he was fired, and he is entitled to rely on, not just that conversation, but all the surrounding circumstances of his termination, which surrounding circumstances indicate it was for unlawful motives. (Pl.'s Opp. Mem. at 18.)

Defendants take too narrow a view of the "circumstances surrounding" the adverse employment action. Surely, an employer's expressed reason for firing an employee does not foreclose further inquiry. Which is to say, the Court rejects Defendants' contention that merely because Plaintiff testified that Chalom told him he was being fired because he refused to prove his loyalty no jury could find that race was a motivating factor underlying his discharge. Indeed, such a result would all but preclude any analysis into pretext.

In any event, although courts generally begin their analysis of a discrimination claim with an inquiry into whether a plaintiff has shown a prima facie case, "the issues surrounding the

prima facie inquiry and those surrounding the pretext inquiry are not easily distinguishable, despite the apparent rigidity of the burden-shifting formula. Instead, the bottom line in a Title VII summary judgment motion is, simply, whether plaintiff has presented sufficient evidence from which a reasonable trier of fact could determine that defendants discriminated against [him.]" *Goldman v. Admin. for Children's Servs.*, 2007 WL 1552397, *5 (S.D.N.Y. May 29, 2007). Here, given the nature, quality and quantity of racial remarks that Plaintiff has proffered, the Court cannot say that no reasonable jury could find that Pratt was terminated because of his race.

Defendants' motion for summary judgment on Plaintiff's claim that he was fired because of his race is denied.

## III. Hostile Work Environment

"Title VII creates a cause of action based on the presence of a hostile working environment when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment . . . .'" *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999) (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993).

To establish a hostile work environment claim, a plaintiff must prove "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). "The plaintiff must show that the workplace was so severely permeated with discriminatory

intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id.*

"This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In analyzing a plaintiff's case, "courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Id.* (citing *Harris*, 510 U.S. at 23). Relevant factors include "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). "But it is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano*, 294 F.3d at 374 (citing *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) and *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999)).

"Because the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who [him]self experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support [his] claim." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). "Nor must offensive remarks or behavior be directed at individuals who are members of the plaintiff's own protected class. Remarks targeting members of other minorities, for example, may contribute to the overall hostility of the working environment for a minority employee." *Id.*

Finally, it is axiomatic that in order to establish a hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of his membership in a protected class.  In other words, an environment which is equally harsh for both men and women or for both young and old does not constitute a hostile working environment under the civil rights statutes." *See Brennan,* 192 F.3d at 318.[2]  *See also Alfano,* 294 F.3d at 374 ("in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex").

Defendants' move for summary judgment on Pratt's claims of hostile work environment based on race and sex.  The Court shall address each in turn.

### A. Hostile Work Environment Based on Race

Defendants maintain that they are entitled to summary judgment on Pratt's claim of a hostile work environment based on his race for the following reasons: (1) he offers only unsupported statements that he was subject to racial epithets; (2) the alleged comments were not sufficiently severe and pervasive; (3) the alleged comments did not adversely affect his terms and conditions of his employment; (4) allegations of harassment directed at co-employees of other races do not support his claim of hostile work environment**;** and (5) Chalom's alleged abrasiveness does not constitute a hostile work environment**.**  For the reasons set forth below, the motion is denied.

Viewing the record as a whole, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

_____

[2]  Hostile environment claims are governed by the same standards under Title VII and the NYSHRL.  *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998).

whether it unreasonably interferes with an employee's work performance," and drawing all inferences in favor of Plaintiff as the non-movant, the Court cannot say that no reasonable jury could find that the conduct to which Plaintiff was subjected created an hostile work environment.

First, there is evidence of at least one incident involved physical intimidation. As set forth in detail above, another salesman allegedly spat at Pratt, called him "nigger" and told him he was going to break Pratt's legs. Chalom's alleged response was to tell the salesman "don't let that nigger win." According to Pratt, Chalom took no action. That Plaintiff was spat at, as well as threatened with violence, supports the conclusion that Pratt's work environment was not just offensive, it was humiliating and threatening. *See generally, Alfano*, 294 F.3d at 374 (noting that even a single act can meet the threshold).

Second, the number of comments as well as the nature of the comments supports a finding of "severe" and "pervasive." The use of blatant racial epithets on a number of occasions allows a jury to conclude that Chalom created a work environment that was hostile to Pratt on the basis of his race. *See Cruz,* 202 F.3d at 571; *cf. Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 439 (2d Cir.1999) ("Perhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates.").

Finally, there is the evidence concerning the remarks and conduct targeting members of other protected classes. Such evidence tends to support the conclusion of an overall hostile work environment that increased the effect of the harassment directed at Pratt. *See Cruz*, 202 F.3d at 570 ("Because the crucial inquiry focuses on the nature of the workplace environment as a

whole, a plaintiff who herself experiences discriminatory harassment need not be the target of other incidents of hostility in order for those incidents to support her claim."); *Boggs v. Die Fliedermaus, LLP*, 286 F. Supp. 2d 291, 298 (S.D.N.Y. 2003) ("abuse against various different groups -- such as both women and African Americans does not excuse behavior, but rather creates an overall hostile environment that exacerbates the effect of harassment experienced individually); *Virola v. XO Commc'ns*, 2008 WL 1766601, at *18 & n.28 (E.D.N.Y. Apr. 15, 2008). Although evidence of harassment targeting other protected classes "may be of limited probative value, . . .[it] cannot be ignored on summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 112 (2d Cir.1997).

That some employees testified at deposition that they did not hear the use of racial epithets does not entitle Defendants to summary judgment; such testimony merely creates an issue of fact for resolution by the jury.

The motion for summary judgment on Pratt's claim of a hostile work environment based on his race is denied.

**B.      Hostile Work Environment Based on Sex**

Defendants' have moved for summary judgment dismissing Pratt's claim for hostile work environment based sex. They maintain that under prudential standing standards Pratt cannot assert hostile work environment claims based on the harassment of others who belong to a protected class of which he is not a member.

In its recent decision in the related case of *Ventimiglia v. Hustedt Chevrolet*, Civil Action No. 05-4149 (Memorandum & Order dated March 25, 2008), the Court addressed this very issue and concluded that "prudential standing considerations support limiting 'aggrieved persons' to

those persons who are injured as a result of discrimination directed at such individual's protected class." *See* slip op. at 19-20. The Court further concluded, however, that to the extent a plaintiff can assert an injury caused by conduct directed against him because of his race or sex and his association with someone of another race or sex, such injury would be sufficient to satisfy prudential standing concerns. *See id.* at 20-21.

Even under this latter standard, Pratt's claim must fail. Pratt was not subject to this treatment "because of his sex" but merely because of his association, perceived or real, with Ventimiglia and Caronia, independent of Pratt's sex. Absent from the record is any evidence to the contrary.

Defendants' motion for summary judgment on Pratt's claim of a hostile work environment based on sex is granted.

## IV. Retaliation Claim

Title VII "forbids an employer to retaliate against an employee for, inter alia, complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)). Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas*. *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003).

"In order to present a prima facie case of retaliation under Title VII . . . , a plaintiff must adduce 'evidence sufficient to permit a rational trier of fact to find [1] that []he engaged in protected participation or opposition under Title VII, [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory

motive played a part in the adverse employment action.'" *Kessler*, 461 F.3d at 205-206 (brackets in original) (quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)).

The first element of the prima facie standard requires that Pratt have taken "action . . . to protest or oppose statutorily prohibited discrimination. *Cruz*, 202 F.3d at 566; *see Taylor v. Family Residences & Essential Enterprises, Inc.*, 2008 WL 268801, at *13 (E.D.N.Y. Jan. 30, 2008). This includes, for example "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. Untied States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990; *see Cruz,* 202 F.3d at 566. Indeed, Title VII's protection against retaliation extends to an employee who speaks out about discrimination not on her own initiative, but in answering questions during an employer's internal investigation "if for no other reason than . . . '[w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication 'virtually always' constitutes the employee's opposition to the activity.'" *Crawford v. Metro. Gov't of Nashville and Davidson County Tennessee*, 129 S. Ct. 846, 851 (2009) (ellipses in original omitted). In order to satisfy this prong of a retaliation claim, the plaintiff need only have a good faith reasonable belief that he was opposing an employment practice made unlawful by Title VII." *Kessler,* 461 F.3d at 210; *see Everson v. New York City Transit Auth.*, 2007 WL 539159, *27 (E.D.N.Y. Feb. 16, 2007) ("protected activity . . . refers to any action taken to oppose statutorily prohibited discrimination"). Additionally, "in satisfying the knowledge requirement, only general corporate knowledge that the plaintiff engaged in a protected activity is necessary. *Id.*

In their motion for summary judgment on Plaintiff's retaliation claims, Defendants maintain that Plaintiff did not engage in protected activity and cannot show either an adverse employment action or a causal connection between the alleged protected activity and the alleged adverse employment action. Defendants' argument that Plaintiff did not engage in protected activity is premised on Plaintiff's deposition testimony that he did not specifically say anything to Chalom regarding his treatment of Caronia and that when he did tell him to stop calling her names it was in the vein of counseling him how to win her over. In response, Pratt has submitted an affidavit, consistent with his deposition testimony, stating that the referenced testimony regarding his failure to say anything was limited to the one incident where Chalom trapped Caronia up against the wall and was screaming at her.

Independent of that episode, as well as others involving Caronia, a jury could find Pratt was retaliated against based on the evidence that Pratt complained to Chalom about the racial slurs directed at him, and that Chalom's response to these complaints including telling Pratt he was lucky to be working at the dealership.

The motion for summary judgment on Plaintiff's retaliation claim is denied.

## V. The Claims against Hustedt Chevrolet and Hustedt Hyundai Are Dismissed

The claims against Hustedt Chevrolet and Hustedt Hyundai are dismissed. It is undisputed in this case that Plaintiff was employed by Chevrolet Inc. and Hyundai Inc. during the time period at issue. The existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). As there was no employer-employer relationship between Plaintiff and either of these two entities,

the claims against Hustedt Chevrolet and Hustedt Hyundai are dismissed.

## Conclusion

For the reason set forth above, Defendants' motion for summary judgment is decided as follows: summary judgment is granted on Pratt's claim for hostile work environment based on sex and the claims against Hustedt Chevrolet and Hustedt Hyundai are dismissed; the motion is otherwise denied.

**SO ORDERED.**

Dated: Central Islip, New York
      March 27, 2009

/s/ _____
Denis R. Hurley
Senior District Judge